IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRADLEY B. MILLER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:23-cv-1696-E-BN |
| | § | |
| VIRGINIA TALLEY DUNN, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

On July 31, 2023, Bradley B. Miller, proceeding *pro se*, removed this case from

a state family-law district court in Dallas County, Texas on the assertion that there

is jurisdiction under 28 U.S.C. §§ 1443, 1446, 1331, 1343, and 1367. *See* Dkt. Nos. 1-

11.

United States District Judge Ada Brown entered a Show Cause Order [Dkt.

No. 19] on August 18, 2023.

That order first referenced Judge Brown's prior order (entered August 3, 2023),

in which the Court "warned Miller that it reserves the right to impose sanctions on

Miller, should the Court conclude that this removal litigation was a result of 'bad

faith.'" Dkt. No. 19 at 1 (quoting Dkt. No. 13 at 2).

The Court next observed that, although "Miller responded to the Court's order,

objecting to any 'Vexatious Litigant' designation," *id.* (citing Dkt. No. 15), "Miller did

not brief his conduct in the 'bad faith' context" and, "[g]iven a review of Miller's

related cases, as noticed, and Miller's filing in this proceeding, the Court is concerned

with whether Miller's litigation behavior amounts to 'bad faith' conduct," *id.*

After the Court set out the applicable procedural background, it concluded,

[a]s noticed in his Notice of Related Cases, [Miller's] notice of removal, and his consequent filings in this proceeding, Miller appears to have engaged in a pattern of behavior that has required federal courts to repeatedly address near-identical bases for relief related to the underlying [state family-law proceeding]. Miller's pattern of behavior suggests bad faith; however, the Court enters no bad faith determination at this time.

*Id.* at 5 (citations and emphasis omitted).

The Court then ordered Miller to "show cause (i) whether [his] litigation conduct constitutes bad faith and (ii) whether [he] should be sanctioned." *Id.* (emphasis omitted). And the Court noted that it would, by separate order, set a non-evidentiary hearing, which Miller must attend in-person. *See id.* at 6-7.

Miller responded. *See* Dkt. No. 21.

The Court then referred "the Show Cause Hearing to [the undersigned United States magistrate judge] for hearing and for recommendation." Dkt. No. 24.

And a non-evidentiary hearing was held before the undersigned on September 26, 2023, at which Miller and counsel for Miller's ex-wife, Virginia Talley Dunn, argued. *See* Dkt. Nos. 26, 28, & 30-32.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should not find that, in the litigation before it, Miller has acted with bad faith such that he should be sanctioned under the Court's inherent authority.

**Legal Standards**

"Federal courts have inherent powers which include the authority to sanction a party or attorney when necessary to achieve the orderly and expeditious disposition of their dockets." *Matter of Carroll*, 850 F.3d 811, 815 (5th Cir. 2017) (quoting *Scaife v. Associated Air Ctr. Inc.*, 100 F.3d 406, 411 (5th Cir. 1996); citation omitted).

This includes "inherent power to sanction deplorable conduct in litigation." *Maguire Oil Co. v. City of Hous.*, 143 F.3d 205, 209 (5th Cir. 1998) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)).

These inherent powers "are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1406 (5th Cir. 1993) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630 (1962)). For example, "even if a statute or rule governs the imposition of attorney's fees, a court may 'resort to its inherent power to impose attorney's fees, as a sanction for bad faith conduct.'" *Maguire Oil*, 143 F.3d at 209 (quoting *Chambers*, 501 U.S. at 50).

But "these powers must be exercised 'with restraint and discretion.'" *Natural Gas Pipeline*, 2 F.3d at 1406 (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)); *see also Chaves v. M/V Medina Star*, 47 F.3d 153, 158 (5th Cir. 1995) ("While this power undoubtedly exists, the threshold for the use of inherent power sanctions is high. Indeed, the [United States] Supreme Court has cautioned that '[b]ecause of their very potency, inherent powers must be exercised with restraint and

discretion.'" (quoting *Chambers*, 501 U.S. at 44; citations omitted)).

That is because "inherent authority 'is not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function.'" *Natural Gas Pipeline*, 2 F.3d at 1406-07 (quoting *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 702 (5th Cir. 1990), *aff'd sub nom. Chambers*, 501 U.S. 32).

"In short, the inherent power springs from the well of necessity, and sparingly so." *Id.* at 1407.

"Accordingly, before imposing sanctions under its inherent power, a [district] court must make a specific finding that the sanctioned party acted in 'bad faith.'" *Maguire Oil*, 143 F.3d at 209 (citation omitted); *accord Chaves*, 47 F.3d at 156; *Carroll*, 850 F.3d at 815.

Bad faith 'is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; ... it contemplates a state of mind affirmatively operating with furtive design or ill will.'" *Budri v. FirstFleet Inc.*, No. 3:19-cv-409-E-BH, 2021 WL 849012, at *6 (N.D. Tex. Feb. 18, 2021) (quoting *Turfgrass Grp., Inc. v. Ne. La. Turf Farms, LLC*, Civ. A. No. 10-1354, 2013 WL 6145294, at *3 (W.D. La. Nov. 20, 2013) (quoting, in turn, *United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir. 1999))), *rec. accepted*, 2021 WL 842123 (N.D. Tex. Mar. 5, 2021).

"Bad faith conduct includes conduct that is motivated by improper purposes such as harassment or delay." *Id.* (citing *Coghlan v. Starkey*, 852 F.2d 806, 814 (5th

Cir. 1988) (per curiam)).

The bad-faith inquiry necessarily differs from applying "[t]he standard under [Federal Rule of Civil Procedure] 11[, which] is whether the attorney or party in question acted with *objective reasonableness* under the circumstances." *Browne v. Nat'l Ass'n of Sec. Dealers, Inc.*, No. 3:05-cv-2469-G, 2006 WL 3770505, at *9 (N.D. Tex. Dec. 14, 2006) (emphasis in original; distinguishing sanctions imposed under a court's inherent authority from those imposed under Rule 11: "Exercise of the court's inherent authority requires the conclusion that the offending party or lawyer acted in bad faith while exercise of the power granted the court by Rule 11 requires instead a determination as to whether, judged by the standard of a reasonable party or lawyer, the party or lawyer offended one of the rule's provisions." (citation omitted)).

And bad faith requires more than just meritless claims. *See, e.g.*, *Metz v. Unizan*, 655 F.3d 485, 489 (6th Cir. 2011) ("'[T]he mere fact that an action is without merit does not amount to bad faith.' Rather, 'the court must find *something more* than that a party knowingly pursued a meritless claim or action at any stage of the proceedings.' Examples of 'something more' include: a finding that the plaintiff filed the suit 'for purposes of harassment or delay, or for other improper reasons,' finding that the plaintiff filed 'a meritless lawsuit and [withheld] material evidence in support of a claim,' or a finding that a party was 'delaying or disrupting the litigation' or 'hampering enforcement of a court order.'" (emphasis in original; citations omitted)); *O'Rourke v. Dominion Voting Sys., Inc.*, 552 F. Supp. 3d 1168, 1207-08 (D. Colo. 2021) (finding "(1) That this lawsuit was filed in bad faith; (2) That Plaintiffs'

counsel's legal contention that the Plaintiffs had Article III standing to bring this suit was not warranted by existing law or a nonfrivolous argument for extending, modifying, or reversing existing law or establishing new law. To the contrary, I find that Plaintiffs' counsel's arguments on the issue of standing frivolous; (3) That Plaintiffs' counsel's act of filing a lawsuit in Colorado against state officials from Georgia, Michigan, Pennsylvania, and Wisconsin was not warranted by existing law or a nonfrivolous argument for extending, modifying, or reversing existing law or establishing new law. To the contrary, it was obvious that there was no personal jurisdiction in Colorado over these defendants and suit against these state officials should never have been filed in Colorado;" "(9) That sanctions are further merited under this Court's inherent authority because of the bad faith nature of the filing of the suit that Plaintiffs' counsel knew or should have known was doomed to failure from the very beginning.").

And "the finding of bad faith must be supported by clear and convincing proof," *In re Moore*, 739 F.3d 724, 730 (5th Cir. 2014) (quoting *Crowe v. Smith*, 261 F.3d 558, 563 (5th Cir. 2001)), and will be upheld "only if clear and convincing evidence supports the court's finding of bad faith or willful abuse of the judicial process," *id.* (footnote omitted), since "[n]either imputed bad faith nor suspicion alone justifies the invocation of the inherent power," *id.* at 733.

"[C]lear and convincing proof" … is a 'high standard' that requires 'more than a preponderance of the evidence.' The evidence supporting a finding of bad faith 'must be so direct and weighty as to leave the factfinder with a firm belief in the truth of

the facts of the case.'" *Budri*, 2021 WL 849012, at *6 (citations omitted).

And, because "[t]he purpose of a court's sanctioning power is to enable it to ensure its own proper functioning," *Conner v. Travis Cnty.*, 209 F.3d 794, 800 (5th Cir. 2000) (citing *Chambers*, 501 U.S. at 43), the Court's bad-faith inquiry is limited to "the litigation before it," *Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 460-61 (5th Cir. 2010) (quoting *NASCO*, 894 F.2d at 703); *see Portillo v. Cunningham*, 872 F.3d 728, 740 n.29 (5th Cir. 2017) (Because "a court's inherent power gives it the 'authority to impose sanctions in order to control the litigation before it,' [t]his court has repeatedly vacated sanctions that punish conduct that did not occur in front of the district court." (citations omitted)).

So, "[i]f the offending party's 'conduct was neither before the district court nor in direct defiance of its orders, the conduct is beyond the reach of the court's inherent authority to sanction.'" *In re Palmaz Scientific, Inc.*, No. SA-16-CV-1021-XR, 2016 WL 7410780, at *3 (W.D. Tex. Dec. 22, 2016) (quoting *Positive Software*, 619 F.3d at 461); *see also, e.g.*, *Bucklew v. St. Clair*, No. 3:18-cv-2117-N-BH, 2019 WL 2724067, at *7 (N.D. Tex. May 29, 2019) ("The alleged conduct in Plaintiff's criminal and CPS cases would not be sanctionable under the Court's inherent powers because they involve matters beyond its 'authority to impose sanctions in order to control *the litigation before it.*'" (emphasis in original; citations omitted)), *rec. accepted*, 2019 WL 2716511 (N.D. Tex. June 28, 2019); *Barcroft v. Gibbs*, 4:16-CV-00562-ALM-CAN, 2017 WL 1499247, at *4 (E.D. Tex. Apr. 5, 2017) ("To the extent Lee's Motion is premised upon and/or asks the Court to sanction Plaintiff for his conduct in the

related state court proceedings rather than his conduct before the Court or any violations of its orders, the Court declines the opportunity to extend its inherent authority." (citations omitted)), *rec. adopted*, 2017 WL 1498532 (E.D. Tex. Apr. 25, 2017); *Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, Civ. A. No. H-05-3167, 2012 WL 12893482, at *22 (S.D. Tex. May 1, 2012) (collecting cases and concluding that, "[c]onsistent with these cases, this court cannot invoke its inherent authority to punish Rapid's actions before other courts because those actions did not violate this court's order or otherwise impair proceedings before this court").

## Analysis

The undersigned must limit these findings, conclusions, and recommendation to the matter that the Court has referred – its August 19, 2023 Show Cause Order [Dkt. No. 19], entered to allow Miller to "show cause (i) whether [his] litigation conduct constitutes bad faith and (ii) whether [he] should be sanctioned" therefore. *Id.* at 5 (emphasis omitted); *see id.* at 1 (recounting that the Court previously "warned Miller that it reserves the right to impose sanctions on [him], should the Court conclude that this removal litigation was a result of 'bad faith'" and that Miller had yet to "brief his conduct in the 'bad faith' context").

Miller's written response to the Show Cause Order and his arguments at the September 26 hearing addressed the applicability of sanctions based on bad faith. *See generally* Dkt. Nos. 21, 31, & 32.

So, while these findings and conclusions are focused on the requisite bad faith to trigger sanctions under the Court's inherent powers, to the extent that the

undersigned finds that the Court lacks inherent authority to impose sanctions, that finding does not necessarily preclude sanctions under other authority, such as Rule 11, *see, e.g.*, *Coghlan*, 852 F.2d at 815 n.15 ("In the context of rule 11 violations, … bad faith is not a necessary element for, nor good faith an absolute shield against, appropriate sanctions." (citations omitted)), or 28 U.S.C. § 1447(c), under which,

> "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal [at the time removal was sought.] Conversely, when an objectively reasonable basis exists, fees should be denied." And "[i]t is not necessary to show that a removing defendant acted in bad faith or other ulterior motive to award attorneys' fees under Section 1447(c)."

*Montgomery-Bey v. S. Methodist Univ.*, No. 3:20-cv-3521-E-BN, 2021 WL 4527257, at *2 (N.D. Tex. Sept. 8, 2021) (citations omitted), *rec. accepted*, 2021 WL 4521141 (N.D. Tex. Oct. 4, 2021).

Turning to bad faith then, Miller's proceeding *pro se* does not curtail the Court's inherent authority to sanction him if he has acted in bad faith. *See, e.g.*, *Carroll*, 850 F.3d at 815 ("To the extent that appellants maintain that sanctions cannot be imposed against them because they are pro se litigants, they are incorrect." (citing *Farguson v. MBank Hous., N.A.*, 808 F.2d 358, 359 (5th Cir. 1986); *Clark v. Mortenson*, 93 F. App'x 643, 652 (5th Cir. 2004) (per curiam))).

But the Court should limit its inquiry as to whether Miller acted in bad faith, such that he should be sanctioned under the Court's inherent powers, to his actions in this federal proceeding.

That is, neither Miller's actions during the state family-law proceeding (which has been pending since 2013, *see, e.g.*, Dkt. No. 21 at 11) prior to the July 31 removal

that kicked off this federal proceeding nor the prior removals of the state family-law

proceeding to federal court count as the "the litigation before" the Court, *Portillo*, 872

F.3d at 740 n.29 (quoting *Positive Software*, 619 F.3d at 460) – to which the Court's

inherent powers are limited.

Footnote 29 from the *Portillo* decision is helpful in this regard. There, the Fifth

Circuit discussed "sanctions because of vexatious conduct," which may be imposed

under "the court's inherent power," *id*. (citations omitted), and found that,

> [t]o the extent that the award [of attorneys' fees] is based merely on
> repeated filings, it is unclear that a court's inherent powers can do the
> same work as [Federal Rule of Civil Procedure] 41(d), which is
> necessarily backward-looking. Rule 41(d) concerns the award of costs
> from a previous action. In contrast, a court's inherent power gives it the
> "authority to impose sanctions in order to control the litigation before
> it."

*Id*. (citations omitted).

The Court of Appeals continued:

> Though the district court discussed Portillo's conduct in the state
> proceedings during the conference on costs, it must tether its fee award
> to some action Portillo took in this litigation. And Portillo did only one
> thing in this case: He filed a complaint.
>      So, to justify an award, we would have to say that, because of his
> prior lawsuits, the naked fact of filing a new one was "[in] bad faith,
> vexatiou[s], [or] wanto[n]." We have found no case in this circuit that
> supports such an approach. Most inherent-power cases concern the
> manner in which a party prosecutes a lawsuit. We are aware of none
> that penalized the fact that a party sued. And, even if that approach
> were permissible, it is not evident that a court could award fees from the
> prior suit.
>      In sum, the court did not find that Portillo had acted in bad faith
> or vexatiously, and, on this record, it is not clear that it could. Thus, the
> court's inherent powers cannot justify the award of fees from the prior
> state litigation.

*Id*. (citation omitted); *see also Doss v. NPC Int'l, Inc.*, 460 F. App'x 362, 369 (5th Cir.

2012) (per curiam) (noting that, while *Positive Software* discussed limitations on a court's inherent authority to impose sanctions, it does not support an argument "that the federal courts lack the authority to sanction [litigants'] pre-removal state court conduct," as "[t]he Fifth Circuit has explicitly held that federal courts have the authority to issue sanctions under state law when a party commits a sanctionable act in a state court action that is later removed to federal court" (citing *Tompkins v. Cyr*, 202 F.3d 770, 787 (5th Cir. 2000))).

Miller did not file this lawsuit. He removed it relying on 28 U.S.C. § 1443 after, according to Miller, the state family-law district court denied his requests for discovery in a name-change suit and refused to continue the case while Miller appealed, while the state court of appeals "denied Miller's mandamus three times." Dkt. No. 21 at 9.

But Miller makes no arguments based on racial equality. And, prior to this removal, Miller was instructed that Section 1443 may only provide federal jurisdiction where the rights at issue are "grounded in racial equality." *Dunn v. Miller*, 695 F. App'x 799, 800 (5th Cir. 2017) (per curiam) ("The Supreme Court has construed the 'equal civil rights' language of 28 U.S.C. § 1443 to be limited to those rights grounded in racial equality. Miller makes no such claim. Accordingly, the district court lacked jurisdiction over this removed action under § 1443." (citing *Georgia v. Rachel*, 384 U.S. 780, 792 (1966); collecting cases)); *see also Easley v. Easley*, 62 F.3d 392, 1995 WL 449817, at *1 (5th Cir. June 28, 1995) (per curiam) ("Easley does not allege facts, either in the district court or on appeal, to support his

contention that removal was proper under § 1443; he has not alleged the denial of a right arising 'under a federal law providing for specific rights stated in terms of racial equality.' Easley fails to mention racial equality at all. Therefore, this is not a case removed under § 1443, the civil rights-jurisdiction statute. (quoting *Texas v. Gulf Water Benefaction Co.*, 679 F.2d 85, 86-87 (5th Cir. 1982))).

So, consistent with the caselaw set out above, the Court must determine whether Miller's July 31 removal based on Section 1443 but not grounded on racial equality amounts to bad faith such that the Court may sanction him under its inherent powers.

The undersigned concludes that it does not.

That this removal contravenes established controlling authority may merit summary remand to state court. But the meritless removal – the "one thing [that Miller did] in this case," *Portillo*, 872 F.3d at 740 n.29 – lacks the "*something more than that a party knowingly pursued a meritless claim,*" *Metz*, 655 F.3d at 489 (emphasis in original), to cross the line to bad faith where Miller argues that *Georgia v. Rachel*, 384 U.S. 780 (1966), "alter[s] the clear meaning of a statute passed by Congress," Dkt. No. 21, ¶ 29.

As Miller argued in part at the September 26 hearing,

[a]s I said in my response, I faced the prospect of going to trial without access to crucial discovery materials. Clearly, the trial was going to be a farce, and my due process rights were certainly going to be violated at trial, because I've seen this over the past ten years in this court. It happens over and over again.

So I removed my case to this federal court under 28 U.S. Code Section 1443. There was no bad faith involved. Just the opposite. The plain language of 28 U.S. Code 1443 authorizes removal under just these

circumstances, and here's the relevant text, relevant part of Section 1443:

"Any of the civil – any of the following civil actions or criminal prosecutions commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending.

"(1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof."

The language of the statute is plain. I could not enforce my rights under the Fourteenth Amendment, either the Equal Treatment Clause or the Due Process Clause, so I removed my case to this Court. That's the definition of good faith.

I want to address *Georgia v. Rachel* for a second. As has been discussed in other pleadings in this federal case, *Georgia v. Rachel* cynically – and I assert illegally – restricted Section 1443 removals to circumstances involving claims of racial discrimination. But as I have already argued, first, Section 1443 contains no language at all regarding race or racial discrimination. And the Supreme Court has ruled in *Connecticut National Bank v. Germai*n, 503 U.S. 249 at 253-54, from 1992, "We have stated time and time again that courts must presume that a legislature says in a statute what it means, and means in a statute what it says there."

Section 1443 means what it says. There is no racial component to Section 1443. Thus, removals under Section 1443 cannot be restricted by race.

Dkt. No. 31 at 6:16-8:4.

Addressing legal arguments made by a *pro se* litigant in *Farguson*, the Fifth

Circuit explained that

[t]his court has no desire to deter any litigant from advancing any claim or defense which is arguably supported by existing law, or any reasonably based suggestion for its extension, modification, or reversal. Positions thus taken cannot be considered as frivolous, although they may be unsuccessful and indeed may be given short shrift. But claims and defenses which fall outside of this broad umbrella may prove frivolous.

808 F.2d at 359.

There, the Court of Appeals concluded that, "[s]o tested, Farguson's claims are

manifestly and patently frivolous." *Id.*; *compare Terra Partners v. Rabo Agrifinance, Inc.*, 504 F. App'x 288, 291 (5th Cir. 2012) (per curiam) (explaining that the would-be amicus's "position is not supported in existing law and is not a reasonable argument to extend or modify the law, given that this court has already ruled on his argument").

But Miller's argument that *Georgia v. Rachel*, 384 U.S. 780 (1966), and similar precedent wrongly added a requirement that does not appear in the text of 28 U.S.C. § 1443 does not qualify as manifestly and patently frivolous such that Miller's argument clearly and convincingly supports a finding of bad faith or a willful abuse of the judicial process.

For example, the en banc Fifth Circuit very recently removed a court-imposed restriction on the language of Title VII:

> For almost 60 years, [42 U.S.C. § 2000e-2(a)(1)] has made it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." Despite this broad language, we have long limited the universe of actionable adverse employment actions to so-called "ultimate employment decisions." We end that interpretive incongruity today.

*Hamilton v. Dallas Cnty.*, 79 F.4th 494, 497 (5th Cir. 2023) (en banc) (footnote omitted); *compare id.* at 501 ("'Absent persuasive indications to the contrary, we presume Congress says what it means and means what it says.' And here, Congress did not say that Title VII liability is limited to ultimate employment decisions." (footnotes omitted)), *with* Dkt. No. 31 at 6:16-8:4; *see also Harrison v. Brookhaven Sch. Dist.*, ___ F.4th ___, No. 21-60771, 2023 WL 6158232, at *1 (5th Cir. Sept. 21, 2023) (per curiam) ("Until August of 2023, LaRenda Harrison's complained-of acts in

- 14 -

this case would not have stated a Title VII claim because they did not concern an 'ultimate employment decision' under our older (and narrower) Title VII precedent. But our recent en banc case, *Hamilton v. Dallas County*, made clear that Title VII requires a broader reading than our 'ultimate employment decision' line of cases permitted and thus 'end[ed] that interpretive incongruity' by removing that requirement." (cleaned up)).

## Recommendation

The Court should not find that, in the litigation before it, Bradley B. Miller has acted with bad faith such that he should be sanctioned under the Court's inherent authority.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v.*

*United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    DATED: October 4, 2023

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE